UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Marcus Paaluhi,<br><br>                    Plaintiff<br><br>v.<br><br>Calvin Johnson, et al.,<br><br>                    Defendants | Case No. 2:23-cv-01980-CDS-EJY<br><br>**Order Granting Defendants'<br>Motion to Dismiss**<br><br>[ECF No. 35] |

Plaintiff Marcus Paaluhi brings this first amended complaint (FAC)[1] and seeks relief under 42 U.S.C. § 1983 for alleged civil rights abuses he experienced while incarcerated at High Desert State Prison (HDSP). First am. compl., ECF No. 31. This action is filed against HDSP Warden Calvin Johnson, HDSP Associate Warden James Scally, Nicholas Parsons, and Dr. Michael Minev, as well as Does 2, 3, and 5 to 15 (ECF No. 31 at 1–2). Defendants Johnson, Scally, Parsons, and Dr. Minev filed a partial motion to dismiss, seeking the dismissal of Johnson, Scally, and Dr. Minev. Mot., ECF No. 35.[2] Parsons answered the FAC. ECF No. 36. Because Paaluhi fails to provide sufficient factual allegations to support his claims against Johnson, Scally, and Dr. Minev, I grant the motion to dismiss and direct Paaluhi to file a second amended complaint if he so chooses.

I.    **Background**[3]

Paaluhi alleges that he was placed in administrative segregation at HDSP in or around August 2021. ECF No. 31 at 4. Paaluhi remained in administrative segregation until approximately December 1, 2022. *Id.* Paaluhi claims the conditions of confinement in administrative segregation imposed an atypical and significant hardship in relation to the

---

[1] I dismissed his original complaint. *See* ECF No. 29.
[2] The motion is fully briefed. *See* Resp., ECF No. 38; Reply, ECF No. 40.
[3] Unless otherwise noted, the court only cites to the plaintiff's complaint to provide context to this action, not to indicate a finding of fact.

1 ordinary incidents of prison life. *Id.* Specifically, he alleges that he was confined to his cell for

2 twenty-three to twenty-four hours per day "and permitted limited 'yard' time during which they

3 were confined to their own 8x8 cage with no contact with other prisoners;" he received shower

4 time only once every three days; "assignment to administrative segregation at HDSP always

5 resulted in a minimum of 6 months regardless;" and he had "no ability to have or participate in a

6 meaningful review of continued segregation[.]" *Id.* at 4–5.

7       Paaluhi asserts that Johnson, Scally, and Does 8 to 15 "were instrumental in imposing and

8 continuing the conditions of confinement experienced by Plaintiff, particularly the inability to

9 have or participate in a meaningful review of continued segregation." *Id.* at 11–12. This included

10 that "Johnson and Scally acquiesced to the conditions of confinement because they were the

11 Warden and Associate Warden during the time the conditions of confinement and thus were

12 aware and failed to supervise those responsible for the conditions of confinement of [Paaluhi]

13 and others similarly situated[,]" and "Johnson and Scally were responsible for the conditions of

14 confinement because their responsibilities include comprehensive oversight of daily facility

15 operations including custody." *Id.* at 12.

16       Paaluhi also alleges that on November 8, 2021, he accidently fell off his bunk resulting in

17 multiple broken bones in his right, dominant hand. *Id.* at 5. He states that two officers examined

18 his hand after the fall and saw it was "visibly broken, swollen and disfigured." *Id.* The officers

19 reported Paaluhi's injury to Dr. Nicholas Parsons.[4] *Id.* at 3, 5. However, Parsons refused to

20 medically treat Paaluhi despite being called three times and after "two officers expressed their

21 personal concerns to him of what they felt was a serious injury." *Id.* at 5. That evening, Paaluhi

22 filed an emergency grievance and shortly thereafter received a response stating, "Medical will

23 come check your injury." *Id.* at 5–6. Two hours later, during "pill call," Parsons saw Paaluhi's

24 hand and informed him that there was no x-ray technician at night, so he would be escorted to

25

26 [4] In the previous complaint, Parsons was referred to as "Doe 1" and "Nurse Nick" and Minev was referred
to as "Doe 4." ECF No. 31 at 3.

medical in the morning. *Id.* at 6. However, Paaluhi did not receive an x-ray the following day, even after two different nurses, [Doe 2 and Doe 3] promised during pill call to give [Paaluhi] medical care." *Id.* Paaluhi filed an informal grievance on or about November 10, 2021. *Id.* He did not receive an x-ray until two weeks later. *Id.* During this time Paaluhi allegedly did not receive any pain medication, nor did he receive pain medication after the x-ray confirmed Paaluhi's injury, despite asking multiple nurses. *Id.* He alleges that during the two weeks in which he did not receive medical care, he was unable to sleep or use the bathroom without pain and discomfort, and consistently sweated. *Id.* at 7. He alleges that his "hand still does not have the full level of functionality it had prior to the untreated injury and still causes pain and discomfort." *Id.* at 9.

Paaluhi describes filing a first level grievance on December 28, 2021, mentioning that his informal grievance had not been addressed in more than forty-five days. *Id.* at 7. On February 2, 2022, Paaluhi filed a second level grievance. *Id.* at 8. The FAC provides conflicting information regarding the responses Paaluhi received to these grievances. *Contrast id.* at 8 ("PLAINTIFF never received a rejection of the Nevada Department of Corrections Administrative Claim Form attached to the first level grievance filed December 28, 2021."), *and id.* at 8 ("PLAINTIFF never received a rejection of the Nevada Department of Corrections Administrative Claim Form attached to the second level grievance filed February 2, 2022."), *with id.* at 8 ("DEFENDANT Scally authored the Nevada Department of Corrections Improper Grievance Memo to PLAINTIFF dated 2/22/2022, titled 1st Rejection - First Level . . . ."), *id.* at 9 ("On May 3, 2022, PLAINTIFF received and signed a copy of the First Level Grievance Rejection."), *id.* at 9 ("DEFENDANT Scally authored the Nevada Department of Corrections Improper Grievance Memo dated 2/23/2022, titled 3rd and Final Rejection – Second Level . . . ."), *and id.* at 9 ("On May 3, 2022, PLAINTIFF received and signed a copy of the Second Level Grievance Rejection.").

First addressing Johnson, Paaluhi alleges that "Johnson failed to fulfill his responsibilities and adequately hire and maintain the necessary minimum of qualified professional medical staff

1  to meet the needs of HDSP's population and [Paaluhi]" and "Johnson had actual knowledge of

2  the staffing and medical deficiencies that caused delays and denials of medical care access to

3  [Paaluhi]." *Id.* at 7. Further, he alleges Johnson was aware "of the medical issue no later than the

4  filing of the first level grievance on or about December 28, 2021, because . . . the first level

5  grievance 'should be reviewed, investigated, and responded to by the Warden at the institution

6  where the incident being grieved occurred . . . .'" *Id.* at 7, 10 (quoting NDOC admin. regul.

7  740.09). Regarding Scally, Paaluhi alleges that "Scally had actual knowledge of [Paaluhi]'s injury

8  yet denied [Paaluhi] access to medical care." *Id.* at 8. He explains that Scally was aware of his

9  medical issues because he authored and signed both of Paaluhi's grievance rejections. *Id.* at 8–9.

10  Specifically, he states that "Scally knew no later than 2/22/2022 because he signed off on the

11  First Level Grievance Rejection, Second Level Grievance Rejection, and signed in the space next

12  to Grievance Coordinator Signature [Paaluhi]'s Second Level Grievance forms related to

13  [Paaluhi]'s requests for medical treatment." *Id.* at 10. Regarding Dr. Minev, he asserts that, either

14  "Parsons deliberately failed to provide or obtain the medical care; or . . . he did in fact attempt to

15  obtain the medical care from DOE DEFENDANTS and . . . Dr. Michael Minev and they

16  deliberately failed to provide the care." *Id.* at 6. Further, he alleges that Dr. Minev "viewed the

17  second level grievance because NDOC Administrative Regulation 740.10 requires that a Medical

18  Director review and respond to any second level grievance relating to medical issues." *Id.* at 8, 10.

19  Finally, Paaluhi alleges that he was denied pain medication by "Minev, Johnson, Scally, and

20  DOES 2, 3, 5-15." *Id.* at 7.

21        Paaluhi's first claim is against Johnson, Scally, Parsons, and Does 2 through 7[5] for

22  violations of his Eighth and Fourteenth Amendment rights because each was deliberately

23  indifferent to his serious medical needs by not timely ensuring he had access to treatment and

24

25  [5] Because he mentions when Dr. Minev allegedly knew about his injury later in this claim, I presume that
    naming Does 2 through 7, instead of 2, 3, and 5 through 7—as he does throughout the remainder of his
26  FAC—is meant to include Dr. Minev. *See* ECF No. 31 at 3 ("DR. MICHAEL MINEV . . . was DOE 4 in the
    original complaint filed November 30, 2023.").

for consciously disregarding the risks of additional medical harm. *Id.* at 10–11. His second claim is against Johnson, Scally, Parsons,[6] and Does 8 through 15, alleging that they violated his Eighth and Fourteenth Amendment rights were violated because Johnson and Scally were instrumental in imposing and continuing the conditions of Paaluhi's confinement, "particularly the inability to have or participate in a meaningful review of continued segregation." *Id.* at 9–10.

## II.      Legal standard

The Federal Rules of Civil Procedure require a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal is appropriate under Rule 12(b)(6) when a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A complaint does not have to contain "detailed factual allegations," but must contain more than an unadorned "the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted) (citing *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual

---

[6] Absolutely nothing in the complaint ties Parsons to any of the claims surrounding the administrative segregation. Even in the paragraphs that follow the title, the claim is only stated against "Calvin Johnson, James Scally, and DOES 8-15 . . . ." ECF No. 31 at 11–12. This likewise applies to Dr. Minev, who is not named in any of the allegations listed under the second claim, nor is his former "Doe 4" included in the list of Does under this count. Finding a complete dearth of allegations raised against Parsons or Dr. Minev as to the administrative segregation confinement, I sua sponte dismiss Paaluhi's second cause of action insofar as it is intended to apply to Parsons or Dr. Minev. Because he has already had the opportunity to amend his complaint and has not so much as attempted to present any facts that could apply to Parsons or Dr. Minev in this capacity, I find that amendment would be futile and dismiss with prejudice.

1  content that allows the court to draw the reasonable inference that the defendant is liable for

2  the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a

3  defendant has acted unlawfully." *Id.*

4       If the court grants a motion to dismiss for failure to state a claim, leave to amend should

5  be granted unless it is clear that the deficiencies of the complaint cannot be cured by

6  amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Under Rule 15(a), a

7  court should "freely" give leave to amend "when justice so requires," and in the absence of a

8  reason such as "undue delay, bad faith or dilatory motive of the part of the movant, repeated

9  failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing

10 party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*,

11 371 U.S. 178 (1962).

12 **III.    Discussion**

13      **A.  Paaluhi's conditions of confinement**

14      In their motion to dismiss, much as they argued the first time, Johnson and Scally argue

15 that because (1) Paaluhi does not allege sufficient facts to support that they participated in his

16 confinement, (2) Paaluhi fails to allege the deprivation of any liberty interest; and (3) any

17 violation of Paaluhi's rights was not clearly established, his fourteenth amendment claim against

18 them should be dismissed. ECF No. 35 at 7–9. Because Paaluhi fails to state a sufficient claim, I

19 grant the motion and do not make a determination as to qualified immunity.

20      First, Johnson and Scally argue that because Paaluhi does not allege sufficient facts to

21 establish that there was a "causal connection" that Johnson or Scally personally participated in

22 his confinement and deprivation of meaningful review, his claim against them should be

23 dismissed. ECF No. 35 at 7. "Vicarious liability may not be imposed on a supervisor for the acts

24 of lower officials in a § 1983 action." *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074 (9th

25 Cir. 2013) (citing *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979)). However, "a prison official in

26 a supervisory position may be held liable under § 1983 if he was personally involved in the

1  constitutional deprivation **or a sufficient causal connection exists between his unlawful**

2  **conduct and the constitutional violation.**" *Id.* at 1085 (citing *Lolli v. Cnty. of Orange*, 351 F.3d 410,

3  418 (9th Cir. 2003)) (emphasis added). Such causal connection may include "[the supervisors']

4  own culpable action or inaction in the training, supervision, or control of subordinates; 2) their

5  acquiescence in the constitutional deprivation of which a complaint is made; or 3) [their]

6  conduct that showed a reckless or callous indifference to the rights of others." *Cunningham v.*

7  *Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000).

8      Paaluhi's FAC alleges that Johnson and Scally violated his constitutional rights "because

9  they were instrumental in imposing his inability to have or participate in a meaningful review of

10 his continued segregation in administrative segregation." ECF No. 31 at 11–12. He states that they

11 were "responsible for the conditions of confinement because their responsibilities include

12 comprehensive oversight of daily facility operations including custody." *Id.* at 12. This is

13 effectively the same thing he alleged in his original complaint, and I dismiss it again for the same

14 reason. In his response, Paaluhi states that his allegations sufficiently establish that "they were

15 the Warden and Associate Warden during the time the conditions of confinement and thus

16 were aware and failed to supervise those responsible for the conditions of confinement of

17 Plaintiff and others similarly situated and that Defendants Johnson and Scally were responsible

18 for the conditions of confinement . . . ." Resp., ECF No. 38 at 6. But this argument is still wholly

19 conclusory. By contrast, in *Ackerman v. Gittere*, the court found that the plaintiff had established a

20 causal connection between the warden's actions and the allegedly unlawful conditions of

21 administrative segregation where "both the warden (Gittere) and associate wardens (including

22 Reubart), made the decision 'to place Asian/Pacific Islander inmates in Administrative

23 Segregation for their own safety and for the safety and security of the institution.'" 2023 WL

24 5093150, at *8 (D. Nev. Aug. 9, 2023), *aff'd*, 2025 WL 1588731 (9th Cir. June 5, 2025). There, the

25 plaintiff clearly pointed to an action taken by the prison higher-up that sufficiently connected

26 that official to the administrative segregation confinement. Here, Paaluhi does not allege that

1    Johnson or Scally initiated or ended his administrative segregation; that they have oversight

2    authority, alone, is not enough to even plausibly allege that they were the cause of his

3    confinement in administrative segregation. Thus, he provides nothing but conclusory

4    allegations, offering nothing new despite being given a full opportunity to cure this same error

5    that led to the dismissal of the original complaint. Having had that opportunity already, and

6    having done nothing with it, I am forced to conclude that amendment would be futile.

7    Therefore, the defendants' motion as to the conditions of confinement is granted, and the

8    conditions of confinement claims against Johnson and Scally are dismissed with prejudice.

9            **B.  Paaluhi's medical care**

10           In their motion to dismiss, Johnson, Scally, and Minev argue that because (1) Paaluhi

11    does not allege a sufficient causal connection between their actions and his allegedly inadequate

12    medical care and (2) any alleged violation of Paaluhi's rights was not clearly established, such

13    that qualified immunity applies, his claim against them should be dismissed. ECF No. 35 at 9–12.

14    Because Paaluhi fails to state a sufficient claim, I grant the motion and again do not make a

15    determination as to qualified immunity.

16           As to Scally, defendants argue that the only allegation that establishes a causal

17    connection between Scally and the alleged medical indifference is that Scally reviewed and

18    responded to Paaluhi's first and second level grievances. ECF No. 35 at 9. They cite *McMillan v.*

19    *Carpenter* for the proposition that mere involvement through the grievance procedure is

20    insufficient to establish personal participation. *Id.* (citing 388 F. App'x 682, 684 (9th Cir. 2010)).

21    In response, Paaluhi lists out the new allegations introduced in the FAC regarding Scally, all of

22    which merely set out that Scally was one the one who received and responded to the two

23    grievances. ECF No. 38 at 12–14.

24

25

26

Although the response from Paaluhi is woefully under-argued and does not raise this issue, I note that—again—that the defendants misstate the law.[7] A defendant is "liable if he or she personally reviewed and responded to the plaintiff's grievance about the alleged constitutional deprivation, was aware of the plaintiff's condition and alternative recommendations, but still failed to prevent further harm." *Hines v. Faulkner*, 2023 WL 2588347, at *5 (D. Nev. Mar. 10, 2023), *reconsideration denied* 2023 WL 7026574 (D. Nev. Oct. 25, 2023) (citing *Colwell v. Bannister*, 763 F.3d 1060, 1070 (9th Cir. 2014)). However, "merely denying a grievance without some decision-making authority or ability to resolve the underlying issue grieved is not enough to establish personal participation." *Countryman v. Sherman*, 2022 WL 17406341, at *10 (W.D. Wash. Oct. 21, 2022) (citations omitted). As a judge in this district explained:

> [t]here is a difference between . . . a grievance about an event that has already occurred, and for which a grievance responder cannot take any action to remedy the inmate's complaint, and a grievance that puts a grievance responder on notice of a potential constitutional issue and the grievance responder takes no reasonable action. For example, if an inmate files a grievance to exhaust administrative remedies after an incident involving excessive force has occurred (and presuming the grievance does not assert that the inmate is still in danger), the grievance responder cannot take any action to prevent the conduct that has already occurred. On the other hand, if an inmate files a grievance and says that he continues to be denied necessary medical care, and the grievance responder ignores the request, or does not act reasonably in response to the request, such action or the failure to act, could subject the grievance responder to liability.

*Sawyer v. Aranas*, 2021 WL 3506525, at *6 (D. Nev. May 26, 2021); *see also King v. Cox*, 2018 WL 4444058, at *7 (D. Nev. May 25, 2018). Here, Paaluhi describes being in pain for two weeks in which he was denied medical care. ECF No. 31 at 7. His first and second grievances—the two he alleges Scally responded to—were for damages as a result of the injury, not to fix the injury itself, and were filed long after those two weeks. *See id.* at 10. Although his emergency (November 8, 2021) and informal (November 10, 2021) grievances were filed during the time that he was seeking immediate medical attention, he does not allege that Scally was directly involved in or

---

[7] In my order dismissing the original complaint, I commented on another mischaracterization of the law by defendants. ECF No. 29 at 4 (describing defendants as having "mischaracterize[ed] . . . the law"). Defendants are cautioned that similar future conduct may be met with sanctions.

had knowledge of either. ECF No. 31 at 5, 6. Although it is possible that Scally did have authority

to address the ongoing injury in November 2021, and Paaluhi's FAC implies—though does not

state explicitly—that he did, Paaluhi has not sufficiently alleged a causal connection between

the medical indifference and Scally's knowledge or involvement. Further, although he alleges

that he was "denied pain medication by the doctor's superiors including DEFENDANTS Minev,

Johnson, Scally, and DOES 2, 3, 5-15[,]" this allegation is supported by absolutely no specific

factual allegations in the FAC. ECF No. 31 at 7. I find that this is far too speculative to survive

this motion to dismiss. Seeing as Scally was not in a position to prevent further harm at the time

that Paaluhi alleges he became aware of the harm, and the other claims against Scally are too

speculative, I grant the motion and dismiss the FAC as to Scally.

Regarding Dr. Minev, Paaluhi alleges that he reviewed the second level grievance because

he was required to under NDOC A.R. 740.10. ECF No. 31 at 8, 10. Defendants argue that this

allegation is entirely speculative based on the regulation and does not expressly assert that Dr.

Minev reviewed the grievance. ECF No. 35 at 10. Regardless, for the same reasons that Scally's

review and response did not establish a sufficient causal connection between Dr. Minev's

actions and the allegedly inadequate medical care, dismissal here is warranted.

Regarding Johnson, Paaluhi makes two claims: (1) that he was responsible for reviewing

Paaluhi's first level grievance pursuant to NDOC A.R. 740.09, and (2) that Johnson failed to

fulfill his responsibilities by adequately hiring and maintaining qualified medical staff. ECF No.

31 at 7, 10. The first claim is dismissed for the same reasons it is dismissed against Scally and Dr.

Minev. As to the second claim, the defendants argue that the FAC essentially seeks to hold

Johnson vicariously liable for the actions of his subordinates, which is improper. ECF No. 35 at

11. In his response, citing to his FAC, but no authority, Paaluhi argues that it is enough to allege

that "Johnson was deliberately indifferent because he had actual knowledge of the staffing and

medical care deficiencies that caused delays and denials of medical care access to Paaluhi." ECF

No. 38 at 14.

1    For an inmate to bring a valid § 1983 claim against a prison official for a violation of the

2  Eighth Amendment, he must first "objectively show that he was deprived of something

3  'sufficiently serious.'" *Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009) (quoting *Farmer v. Brennan*,

4  511 U.S. 825, 834 (1994)). "A deprivation is sufficiently serious when the prison official's act or

5  omission results 'in the denial of the minimal civilized measure of life's necessities.'" *Id.* (quoting

6  *Farmer*, 511 U.S. at 834). Next, the inmate must "make a subjective showing that the deprivation

7  occurred with deliberate indifference to the inmate's health or safety." *Foster*, 554 F.3d at 812. "To

8  satisfy this subjective component of deliberate indifference, the inmate must show that prison

9  officials 'kn[e]w [ ] of and disregard[ed]' the substantial risk of harm, but the officials need not

10 have intended any harm to befall the inmate; 'it is enough that the official acted or failed to act

11 despite his knowledge of a substantial risk of serious harm.'" *Lemire*, 726 F.3d at 1074 (quoting

12 *Farmer*, 511 U.S. at 837, 842). "Finally, plaintiffs alleging deliberate indifference must also

13 demonstrate that the defendants' actions were both an actual and proximate cause of their

14 injuries." *Id.*

15    Supervisors "can be liable for their own conduct." *Peralta v. Dillard*, 744 F.3d 1076, 1085

16 (9th Cir. 2014). But "[s]upervisors aren't vicariously liable for constitutional violations under

17 section 1983." *Id.* (citing *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989)). "Consequently, a

18 prison administrator can be liable for deliberate indifference to a prisoner's medical needs if he

19 'knowingly fail[s] to respond to an inmate's requests for help.'" *Id.* at 1085–86 (quoting *Jett v.*

20 *Penner*, 439 F.3d 1091, 1098 (9th Cir. 2006)).

21    Although a deliberate indifference claim based upon a supervisor's failure to adequately

22 staff a prison can succeed, Paaluhi's FAC lacks the specificity required to survive this motion.

23 For example, in *Lemire v. California Dep't of Corr. & Rehab.*, the plaintiff prisoner pointed to the

24 prison supervisors' decision to "remov[e] the floor officers from Building 8 for several hours

25 during the middle of the day," which were concrete facts that supported a possible Eighth

26 Amendment violation. 726 F.3d at 1075. By contrast, there are no factual details whatsoever in

1  the FAC that explain how Johnson's actions led to inadequate staffing or lackluster training.

2  The mere allegation that he maintained inadequate staff is, as defendants argue, an attempt to

3  hold Johnson vicariously liable. Because there is no vicarious liability in § 1983 claims, this claim

4  is dismissed.

5        Although the FAC was Paaluhi's second opportunity to state his claims and he again

6  failed to do so, I find that dismissal with prejudice is not yet warranted. Paaluhi will be afforded

7  one more opportunity to state his medical indifference claims against Johnson, Scally, and Dr.

8  Minev—in addition to Parsons, titled as the Second Amended Complaint. If he fails to

9  sufficiently state his claims again, his claims against Johnson, Scally, and Dr. Minev will be

10 dismissed with prejudice.

11       **C.  Does 1–15**

12       In my order dismissing the original complaint, I ordered Paaluhi to show cause as to

13 what efforts he was making to identify these individuals and if additional time is needed to make

14 such identification and explain why this court should not dismiss the claims against Does 1 to 15

15 for failure to prosecute under Federal Rule of Civil Procedure 41(b). ECF No. 29 at 7. In his

16 response, Paaluhi stated that he had identified Parsons (Doe 1) and Dr. Minev (Doe 4) but had

17 yet to successfully identify the other Does. *See* ECF No. 30.

18       The use of "John Doe" to identify a defendant is generally disfavored in federal court. *See*

19 *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) (citing *Wiltsie v. Cal. Dep't of Corr.*, 406 F.2d

20 515, 518 (9th Cir. 1968)). It is clear from his response that Paaluhi is at least somewhat working

21 to identify the people still identified as Does 2, 3, and 5–15. However, it has now been nearly

22 seven months since that order and Paaluhi has not sought to amend his complaint to include the

23 names of additional defendants or filed notice with the court that he has identified any

24 additional people.

25       The court's general practice is to dismiss Doe defendants without prejudice to a plaintiff

26 conducting discovery to identify the unknown defendants and then filing a motion requesting

leave to amend the complaint to name the intended defendants and to issue summons upon them. *See Gillespie*, 629 F.2d at 642. If Paaluhi wishes to sue the people currently identified as Does 2, 3, and 5–15, he should first ascertain their identities. After identifying them, Paaluhi may request leave to amend his complaint to add these defendants.[8] *See Fernandez v. Davis*, 2024 WL 5205543, at *2 (N.D. Cal. Dec. 23, 2024).

**IV.    Conclusion**

IT IS THEREFORE ORDERED that the defendants' motion to dismiss **[ECF No. 35] is GRANTED:**

1. Any claims against Dr. Minev or Parsons regarding the confinement are sua sponte **DISMISSED with prejudice.**

2. The conditions of confinement claims against Johnson and Scally are **DISMISSED with prejudice.**

3. The medical indifference claims against Johnson, Scally, and Dr. Minev are **DISMISSED without prejudice.**

4. All claims against Does 2, 3, and 5–15 are **DISMISSED without prejudice.**

IT IS FURTHER ORDERED that should plaintiff seek to file a second amended complaint, he must do so no later than **August 1, 2025**. If a second amended complaint is filed, the parties are directed to a settlement conference within thirty days of its filing.

Dated: July 16, 2025

_____
Cristina D. Silva
United States District Judge

---

[8] If Paaluhi elects to submit a second amended complaint, any newly-identified defendants may be included, but the second amended complaint may not include any Doe defendants.